UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

Civil Action No. 15-12-HRW

HELEN KELLEY,                                                           PLAINTIFF,

v.              MEMORANDUM OPINION AND ORDER

WESTFIELD INSURANCE COMPANY
and
TRANSAMERICA LIFE INSURANCE
COMPANY,                                                                DEFENDANTS.

This matter is before the Court upon Defendant Transamerica Life Insurance Company's Motion to Dismiss [Docket No. 5] and Defendant Westfield Insurance Company's Motion for Summary Judgment [Docket No. 8]. The motions have been fully briefed by the parties [Docket Nos. 9, 11, 12 and 13]. For the reasons set forth herein, the Court finds that the Complaint fails to state a claim for which relief can be granted and that the Defendants are entitled to judgment as a matter of law.

I.

The facts as alleged in the Complaint are, for the most part, undisputed. As set forth in the Complaint, this matter arises from a severe accident which occurred on April 28, 1983 and resulted in Plaintiff's late husband's, William Kelley II's, complete and permanent paralysis. [Complaint, Docket No. 1-1, ¶ 5]. A lawsuit followed the accident, in which Plaintiff and her husband alleged negligence; Mr. Kelley sought damages for personal injuries resulting from the accident and Plaintiff Helen Kelley sought damages for lost of consortium. *Id.* at ¶ 8-9. Both

claims were settled with the negligent party and their insurance carrier, Defendant Westfield Insurance Company ("Westfield"). *Id.* at ¶ 10.

On January 4, 1985, Mr. and Mrs. Kelley entered into a Settlement Agreement and Release (hereinafter, "Agreement) with Westfield. *Id.* at ¶ 11. The Agreement was drafted by the attorney for Westfield. [ Affidavit of C. David Mussetter, Docket No. 9-1].

The Agreement provided for a structured settlement of Mr. and Mrs. Kelley's claims, including particularly at issue here, lifetime payments of five thousand dollars ($5,000) per month, but guaranteed for a minimum of thirty (30) years. [Agreement, Docket No. 8-2]

Section I, Paragraph 2 of the Settlement Agreement states:

> In consideration for this Release, Westfield Insurance Company (hereinafter referred to as "the Insurer") agrees to make the following payments:
>
> Eight Hundred Thousand Dollars ($800,000) on January 4, 1985;
>
> Five Thousand Dollars ($5,000) per month, for life, guaranteed for thirty (30) years beginning February 4, 1985.

*Id.*

In addition, lump sum payments were scheduled every five years:

> (a) Three Hundred Ten Thousand Dollars ($310,000) on February 4, 1990.
> (b) One Hundred Thousand Dollars ($100,000) on February 4, 1995.
> ( c ) One Hundred Fifty Thousand Dollars ($150,000) on February 4, 2000.
> (d) One Hundred Seventy-Five Thousand Dollars ($175,000) on February 4, 2005.
> (e) Two Hundred Twenty-Five Thousand Dollars ($225,000) on February 4, 2010.
> (f) Two Hundred Seventy-Five Thousand Dollars ($275,000) on February 4, 2015.

2

The Agreement further contains terms regarding, specifically, the death of either or both Plaintiff or her husband before the expiation of the 30 year period, February 4, 2015:

> In the event of the death of William E. Kelley, II prior to February 4, 2015, the payments in the amounts heretofore set forth and on the dates hereinabove mentioned, shall continue to his wife, Helen Kelley, said payments to continue until February 4, 2015.
>
> In the event of the death of Helen Kelley prior to February 4, 2015, the payments in the amounts heretofore set forth and on the dates hereinabove mentioned, shall continue to William E. Kelley, II, said payments to continue as set forth above.
>
> In the event that both William E. Kelley, II and Helen Kelley die prior to February 4, 2015, the payments in the amounts heretofore set forth and on the dates hereinabove mentioned, shall pass into the estate of William E. Kelley, II or Helen Kelley, whichever lives longer, said payments to continue until February 4, 2015.

*Id.*

It is undisputed that Plaintiff and her husband were represented by counsel, Garis Pruitt and C. David Mussetter, and Plaintiff, her husband and her attorneys signed the Agreement.

The Agreement expressly gave Westfield the right, which it ultimately exercised, to assign its duties and obligations for future payments to Transamerica Annuity Service Corporation ("Transamerica"). *Id.* The Agreement further provided that all payments to be made, except for the initial $800,000 payment, could be funded by the purchase of an annuity from Transamerica Life Insurance Company. *Id.*

Mr. Kelley died on June 22, 2012. [Docket No. 1-1, ¶ 6].

On July 19, 2012, Transamerica sent a letter to Plaintiff informing her that the 360th and final monthly payment would be due for January 4, 2015, and that the final lump sum payment of

3

$275,000 would be for February 4, 2015.

On December 25, 2014, Transamerica made the final guaranteed monthly payment of $5,000 as well as the final guaranteed lump-sum payment of $275,000. [Affidavit of Tracy Martin, Docket No. 5-2 ¶ 2 and 3].

As provided for in the Agreement, the first monthly payment was made on February 4, 1985. Therefore, Plaintiff and/or Mr. Kelley received 11 payments in 1985, 12 payments each year from 1986 through 2013, and 13 payments in 2014, because the final and 360th payment, due for January 4, 2015, was made on December 25, 2014.

On February 4, 2015, Plaintiff initiated this lawsuit against Westfield and Transamerica in Greenup Circuit Court. Plaintiff alleges that the Agreement requires that monthly payments be made "not only through the life of William E. Kelley, II, but also through the life of [Plaintiff], as compensation for her consortium claim." [Docket No. 1-1, ¶ 17]. She alleges that "[f]ailure to so pay the Five Thousand Dollar ($5,000.00) monthly payments to Kelley for her lifetime constitutes a breach of contract . . . ." *Id.* at ¶ 18.

Defendants filed a Notice of Removal, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332. This Court sustained the removal.

Transamerica seeks dismissal of Plaintiff's Complaint and Westfield seeks summary judgment. Both Defendants argue that Plaintiff's allegations ignore the clear, unambiguous terms of the Agreement, which was entered into knowingly and voluntarily by Plaintiff and Mr. Kelley, and their attorneys. As such, her claim fails.

## II.

Defendants' dispositive motions attack both the legal and factual sufficiency of Plaintiff's case. The Federal Rules of Civil Procedure allow for both methods.

Transamerica seeks dismissal pursuant to Fed.R.Civ.Proc. 12(b)(6). Dismissal of a complaint is warranted under Fed.R.Civ.P. 12(b)(6) if it fails to state a claim upon which relief can be granted. The "complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Bishop v. Lucent Technologies, Inc.,* 520 F.3d 516, 519 (6th Cir. 2008) (internal citation omitted).

Westfield seeks judgment as a matter of law pursuant to Fed.R.Civ.Proc. 56. Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56( c ). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The Court views all evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). " 'The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [non-moving party].' " *Moldowan v. City of Warren,* 578 F.3d 351, 374 (6th Cir.2009) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986)).

The law / fact distinction which organizes the rules of civil procedure is of no moment in this case. This Court's task is to interpret the Agreement, which, in this case, speaks for itself

### III.

In seeking dismissal, Defendant Transamerica argues that the terms of the Agreement are unambiguous and clearly provide that the $5,000 monthly payments would be made for the duration of Mr. Kelley's life, but if Mr. Kelley died before February 4, 2015, then the payments would terminate 30 years, or 360 months, from February 4, 1985, the date of the first monthly payment. Transamerica states that it has tendered all required monthly payments.

Westfield denies any involvement in the dispute between Plaintiff and Transamerica. Specifically, it entered into an agreement with Defendant Transamerica to provide payment to the Kelleys according to the terms of the Release. The validity of that agreement has not been questioned.

Plaintiff contends that the Agreement is ambiguous and, as such, should be construed against the Defendants. She further maintains she never would have settled that claim under Transamerica's interpretation of the Agreement.

The parties concede that Kentucky law governs this case. With regard to the interpretation of insurance contracts, Kentucky's Supreme Court has stated, in no uncertain terms:

> [A]s to the manner of construction of insurance policies, Kentucky law is crystal clear that exclusions are to be narrowly interpreted and all questions resolved in favor of the insured. Exceptions and exclusions are to be strictly construed so as to render the insurance effective. Any doubt as to the coverage or terms of a policy should be resolved in favor of the insured. And since the policy is drafted in all details by the insurance company, it must be held strictly

accountable for the language used.

*Eyler v. Nationwide Mutual Fire Insurance Company*, 824 S.W.2d 855, 859 (Ky. 1992)(citations omitted).

However, these canons of construction are applicable only when the insurance contract is ambiguous or self contradictory. *Peoples Bank & Trust Co. v. Aetna Casualty & Surety Co.*, 113 F.3d 629, 636 (6th Cir. 1997). In the absence of a ambiguity, the contract is to be given its plain meaning. *Id.*

Plaintiff insists that paragraph 2 of the Agreement, which provides for monthly payments of Five Thousand Dollars ($5,000) for life, guaranteed for thirty (30) years, is ambiguous because it does not state whose life is being referenced. Yet, Plaintiff's bid for a lifetime of monthly payment is in direct contravention of the clear terms of the Agreement. The Agreement provides monthly payments for life, guaranteed for 30 years in the event Mr. Kelley died before 30 years elapsed. The terms contained in that same paragraph make clear that "for life" applies only to Mr. Kelley. Plaintiff stopped reading mid-way through the Agreement. The Agreement **also** provides that "[i]n the event of the death of William E. Kelley, II prior to February 4, 2015, the payments in the amounts heretofore set forth and on the dates hereinabove mentioned, **shall continue to his wife, Helen Kelley, said payments to continue until February 4, 2015.**" (emphasis added). By differentiating between Mr. and Mrs, Kelley, it is clear that the measuring life is that of Mr. Kelley. Additionally, the next term of Paragraph I provides that "[i]n the event of the death of Helen Kelley prior to February 4, 2015, the payments in the amounts heretofore set forth and on the dates hereinabove mentioned, **shall continue to William E. Kelley, II, said payments to continue as set forth above.**" (emphasis added). Reading the entire Agreement

7

confirms that the payments would not continue past February 4, 2015 if Mr. Kelley died before that date. Any other interpretation of the Agreement would render both the provision for guaranteed monthly payments for 30 years/360 months and the provision for payment to Plaintiff continuing only until February 4, 2015 to meaningless prattle. Nowhere in the Agreement is there any indication that the parties intended for Plaintiff to receive monthly payments for life, and to construe the Agreement that way would render subsequent provisions of the very same paragraph moot. Plaintiff's interpretation of the Agreement only succeeds if these two provisions are ignored, an approach strictly prohibited by well-established contract law. "Any contract or agreement must be construed as a whole, giving effect to all parts and every word in it if possible." *Cantrell Supply, Inc. v. Liberty Mut. Ins.*, 94 S.W.3d 381, 384-85 (Ky. Ct. App. 2002).

Plaintiff also argues that she never would have agreed to a settlement that did not pay her $5,000 per month for the term of her life because her loss of consortium claim was so strong. She urges the Court to consider her situation at the time the Agreement was entered and the conditions under which it was executed. She emphasizes that she had a substantial claim for loss of consortium; she provided daily care for more than twenty-eight (28) years to Mr. Kelley, who was paralyzed from the chest down. She states that it is only logical the Agreement contemplated that she also would receive the benefit of lifetime monthly payments.

The Court recognizes that "the agreement is to be construed according to the intention of the parties," however, in order to determine such intention, a court "must give consideration and effect to every provision. *State Farm Mut. Auto. Ins. Co. v. Hobbs*, 268 S.W.2d 420, 422 (Ky. 1954). Yet, notwithstanding what Plaintiff and her husband endured, this Court cannot "revise the agreement while professing to construe it." *Id.*

8

Taken as a whole, the Agreement is not ambiguous. No portion of it discusses the possibility of payments to Mrs. Kelley after February 4, 2015, if her husband predeceased her. Instead, it clearly provides that in the event Mr. Kelley predeceased Plaintiff prior to February 4, 2015, then Transamerica would make all remaining 30 year/360 month guaranteed monthly payments, the final being paid on January 4, 2015, and all remaining guaranteed lump-sum payments, the final being paid on February 4, 2015. Transamerica made all such payments and Plaintiff is not entitled to any further payment.

### IV.

Pursuant to the unambiguous terms of the Agreement. Plaintiff has failed to allege any facts which plausibly entitle her to relief. No amendment to the Complaint can cure this deficiency. As such, the Complaint should be dismissed in its entirety and Defendants are entitled to judgment as a matter of law.

Accordingly, **IT IS HEREBY ORDERED** that Defendant Transamerica Life Insurance Company's Motion to Dismiss [Docket No. 5] and Defendant Westfield Insurance Company's Motion for Summary Judgment [Docket No. 8] be **SUSTAINED** and this matter be **DISMISSED WITH PREJUDICE** and **STRICKEN** from the docket of this Court.

This 22nd day of October, 2015.



Signed By:
*Henry R. Wilhoit, Jr.*
**United States District Judge**

9